FOSTER v. T. L. SMITH CO. et al.

(Circuit Court of Appeals, Seventh Circuit. February 1, 1917. Rehearing Denied July 26, 1917.)

No. 2360.

1. PATENTS ⊜⇒328—VALIDITY AND INFRINGEMENT—CONCRETE MIXER.
    The Smith patent, No. 803,721, for a concrete mixing machine, while for a combination of old elements, covers a new and useful combination, not anticipated, and discloses invention; also *held* infringed as to a number of claims, but claim 5 *held* invalid, as a duplication of another claim.

2. PATENTS ⊜⇒27(1)—INVENTION—ADAPTATION TO ANOTHER ART.
    It is usually true that the observation and the imagination of the inventor are required to make adaptations from one art to another.

3. PATENTS ⊜⇒234—INFRINGEMENT—FORMAL CHANGES.
    Infringement is not avoided by changes in the mechanism of the patented device, so as not to literally conform to the language of the claims, if the defendant has appropriated the real substance of the invention.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the T. L. Smith Company, the Jaeger Machine Company, and the Waterloo Cement Machinery Corporation against

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Edward Foster. Decree for complainants, and defendant appeals. Affirmed in part.

By the decree of the District Court appellant is enjoined from continuing the infringement of claims 5, 16, 17, 18, 28, 30, 31, and 32 of patent No. 803,721, issued on November 7, 1905, to appellee the T. L. Smith Company, as assignee of the applicant, Thomas L. Smith, for a machine to mix concrete. The other appellees are joint, exclusive licensees of the Smith Company. Appellant is the owner and user of a single machine, which was manufactured and sold to him by the Cement Tile Machinery Corporation of Waterloo, Iowa, which is defending this suit.

Figures 1 and 3 of the drawings are as follows:

Fig. 1.

Fig. 3.

Smith's specific description of the form which is stated in the patent to be the preferred form discloses a polyhedric mixing receptacle and a tiltable supporting frame which is in a plane at right angles to the receptacle's axis of revolution. To the specific details of this preferred form many claims were addressed, of which claim 24 may be taken as illustrative:

"In a mixing machine, the combination of a polyhedric mixing receptacle, a tiltable frame supporting said receptacle, means for tilting said frame to any position in the entire circle of its revolution, a gear attached to the periphery of said receptacle, said gear having supporting surfaces and guiding surfaces whereby said receptacle is completely centered and guided, and means for applying the power to said gear in any position of said receptacle and tiltable frame."

But the specification pointed out that the form of the mixing receptacle was not of the essence of the general inventive concept, and stated that a receptacle of any desired shape might be employed. Likewise, with respect to the preferred form of frame which entirely surrounds the revolving receptacle and supports it by means of rolls *17* fitting into the U-shaped annulus *22*, the specification stated that the invention in its general aspect might be enjoyed by the use of a tiltable frame of "any desired form adapted for supporting the mixing receptacle."

None of the claims counted on in this suit is limited to the specific form of receptacle or tiltable frame or of the annulus on the receptacle.

Claim 5: "In a mixing machine, the combination of a receptacle provided with means for charging and discharging the same, a ring or annulus around the receptacle and provided with teeth forming an annular rack, a tiltable frame in which the receptacle is revolubly supported, said frame provided with projecting trunnions mounted rotatably in suitable bearings, one of said trunnions being tubular, a shaft extending through the tubular trunnion and provided on its inner end with a gear-wheel engaging the annular rack bar of the ring or annulus, and means for rotating said shaft."

Claim 16: "In a mixing machine, the combination of a mixing receptacle having one clear and unobstructed opening for feed and discharge, concentric, or substantially so, with the axis of revolution, a tiltable frame in which the receptacle is revolubly supported, means for tilting the frame to any position in the entire circle of its revolution, whereby the receptacle may be filled from any point above it and discharged either from the right-hand side, or the left-hand side of the machine."

Claim 17: "In a mixing machine, the combination of a mixing receptacle, means for imparting to said receptacle a continuous rotation, a tiltable frame revolubly suporting such receptacle, means for tilting said frame to any position in the entire circle of its revolution, and means for holding said frame in any position."

Claim 18: "In a mixing machine, the combination of a mixing receptacle, a tiltable frame revolubly supporting said mixing receptacle, means for tilting said frame to any position in the entire circle of its revolution, and means for continually revolving said receptacle while in any tilted position, or while moving from one position to another."

Claim 28: "In a mixing machine, the combination of a mixing receptacle having one clear and unobstructed opening for feed and discharge, concentric or substantially so, with the axis of revolution, a tiltable frame supporting said receptacle, means for tilting said frame either to the right or to the left of the loading point, a gear on said mixing receptacle, and means for applying power to said gear in any position of said frame and receptacle."

Claim 30: "In a mixing machine, the combination of a mixing receptacle having one clear and unobstructed opening for feed and discharge concentric or substantially so, with the axis of revolution, a tiltable frame supporting said receptacle, means for tilting said frame either to the right or to the left of the loading point, a gear disposed around the middle of said receptacle, and means for applying power to said gear in any position of said receptacle and tiltable frame."

Claim 31: "In a mixing machine, the combination of a mixing receptacle having one clear and unobstructed opening for feed and discharge concentric, or substantially so, with the axis of revolution, a tiltable frame supporting said receptacle, means for tilting said frame either to the right or to the left of the loading point, a gear on the largest diameter of said receptacle, and means for applying power to said gear in any position of said frame and receptacle."

Claim 32: "In a mixing machine, the combination of a mixing receptacle having one clear and unobstructed opening for feed and discharge concentric, or substantially so, with the axis of revolution, a tiltable frame supporting said receptacle, means for tilting said frame either to the right or to the left of the loading point, a circular toothed rack disposed around the middle of said receptacle, a bevel pinion engaging said toothed rack and journaled in

the tilting axis, and means for connecting said pinion with the source of power."

The commercial machines of the respective parties are substantially alike. We subjoin a cut of the Waterloo mixer:

George C. Kennedy, of Waterloo, Iowa, and John E. Stryker, of St. Paul, Minn., for appellant.

George L. Wilkinson, of Chicago, Ill., for appellees.

Before BAKER, MACK, and ALSCHULER, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). [1] I. Utility is presumed; but if we first apprehend the nature and advantages of the machine which Smith conceived, we shall be in a better position to understand and apply the prior art.

Smith's most general conception of his machine as an entirety is probably best stated in claim 32. There, the only limitations upon the form of the mixing receptacle are that it shall have but one opening, which must be clear and unobstructed and substantially concentric with the axis of revolution, and that it shall have a recognizable "middle." The advantages of the one clear and unobstructed opening are that it may be used both for feed and discharge; that the feed may be one side where the materials are gathered and the discharge on the other side where the mixed concrete is being used; and that thereby a form of receptacle is provided wherein more than 50 per cent. of the cubic capacity can be occupied by the ingredients that are being mixed, as against 10 or 15 per cent. in the cylindrical or horizontal drum machines which have openings at each end, one for feeding and the other for discharging. The saving of size and weight, in relation to the capacity of the machine, smaller cost of manufacture, lower selling price, decreased expense of operation, are of advantage both to the maker and the user. By having a "middle" part, as in a pot or jar, the tilting means and likewise the rotating means are applied

substantially in line with the center of gravity of the loaded receptacle and therefore both movements may be most readily effected; and also the driving pinion, journaled in the tilting axis, may thus engage the toothed rack on the periphery of the receptacle without the use of intermediary gears or other driving means.

In the practical art of building and using concrete mixing-machines these advantages, and the type of machine which made them possible, were unknown prior to Smith's disclosure.

II. Anticipation. We have examined all the prior patents in the record. Two are especially relied upon. If these do not anticipate Smith's conception and disclosure of means, it is needless to set forth the particulars of the other prior patents.

Day and Lampard's British patent, No. 441 of 1878, exhibits a concrete mixer of the horizontal drum type. The receptacle is supported at its right-hand end by a series of rollers which are attached to the tilting frame. The left-hand end is supported by a shaft which is journaled in the tilting frame. The tilting frame is rectangular and entirely surrounds the drum receptacle. By means of trunnions at the middle of the sides the tilting frame is supported within a stationary rectangular frame. Materials are fed into the right-hand end of the drum through a circular opening, concentric with the axis of the drum. Attached to the right-hand end of the tilting frame is a hopper that extends into the feed opening. The drum is rotated by means of a toothed rack which encircles the drum and engages with a driving pinion journaled in one of the trunnions. When the material is mixed it is discharged through an opening at the left-hand end of the drum. For this purpose the receptacle and its tilting frame may be depressed at the left until the end of the drum strikes the ground at an angle of about 45°. The second claim covers "the combined arrangement, substantially as hereinbefore described and illustrated in the drawing annexed, whereby the mixing box can be revolved and at the same time tilted to and fro to any desired angle." In the specification the reference to "tilting to and fro" is that "the mixing box as the mixing progresses may also be rocked or oscillated on the trunnions to insure the perfect mixing of the materials." When we look to the arrangement described and illustrated in the drawing, we find that the tilting to the right is very limited; it can proceed only to the point where the hopper which is permanently attached to the tilting frame strikes the right-hand end of the supporting frame. And even if the tilting axis were elevated so high that the left-hand end of the drum would not strike the ground the feed opening could not be carried below the horizontal position at the left on account of the hopper striking the fixed supporting frame at that end. Day and Lampard's combination does not include a mixing receptacle having one clear and unobstructed opening for feed and discharge, nor means for tilting the frame to any position in the entire circle of its revolution whereby the receptacle may be filled from any point above it and discharged either from the right-hand side or the left-hand side of the machine.

Taylor's patent, No. 433,663, August 5, 1890, is for a tumbling box to clean castings. The machine is supported upon a fixed frame.

A tiltable yoke is supported by means of trunnions upon the fixed frame. Within the yoke is supported a receptacle of the pot or jar form. To the bottom of the receptacle is attached a beveled gear, which is engaged by a beveled pinion on a shaft which is housed in the tilting yoke and carries at its outer end a spurred gear which in turn engages another spurred gear mounted to rotate around the axis of one of the trunnions. The receptacle is thus rotated by means of two parallel shafts, two spurred gears, and two beveled gears. As the spurred gears are outside and the beveled gears inside of the stationary frame, the shaft which is housed in the tilting yoke limits the tilting so that the receptacle can be loaded and discharged only on one side of the stationary frame. This Taylor structure lacks the Smith purpose and means of tilting, and likewise the simple and direct rotating means, both of which are essential elements of the Smith combination.

[2] III. Invention. The prior art beyond question shows that each element of the Smith combination was old. Even if this were not true, and if Smith had in fact created a new element, he would not secure a monopoly of it by putting it into a combination claim. If he did not separately claim it, he would by putting it into a combination donate it to the public. So the fact that the elements were old is not material, for the combination is itself the entity with which we are now concerned. We have found that this entity is new. In the light of the prior art, was the use of the inventive faculty required in its production? The prior art must be examined with the view of determining the purposes and laws of operation of the prior structures. If the idea of the patent in suit so obtruded itself from the prior art that the ordinary mechanic could not help from stumbling upon it, then of course no invention was involved. While it may be easy enough now, after we have comprehended Smith's purpose and means, to read a part of Smith's total conception into the Day and Lampard patent, and another part into the Taylor patent, we are unable to find in either of them, when they are taken in the light of their purposes and laws of operation, the conception of Smith and his combination of means for embodying it. The Day and Lampard structure was of the horizontal drum type. Smith produced an essentially different type. Nothing of the sort had before appeared in the practical or even in the paper art of making and using concrete mixers. Granting, as we do, that tumblers for castings in foundries and puddling furnaces in steel mills are in analogous arts, and therefore must be taken into account, yet it is evident that the strongest of such references, the Taylor patent, would have to be reorganized and materially modified in order to adapt it to Smith's conception. And usually it may be taken as true that the observation and the imagination of the inventor are required to make adaptations from one art to another. Potts v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275; Wold v. Thayer, 148 Fed. 227, 78 C. C. A. 350. When one has conceived a new entity he may go where he pleases for his materials with which to give it a body. Here the act of the inventor consisted of picturing in the creative imagination the new result, the

new machine for achieving it, and the way to build the machine, rather than of the selection and rearrangement of the elements which may be found singly or in partial groups in concrete mixers of the horizontal drum type or in the tumblers for casting in foundries or in the puddling furnaces in steel mills. Indiana Mfg. Co. v. J. I. Case Co., 154 Fed. 365, 83 C. C. A. 343; Railroad Supply Co. v. Hart Steel Co., 222 Fed. 261, 138 C. C. A. 23.

If the mechanics of the case left us in doubt, certain matters disclosed by the record should cause us to resolve that doubt in favor of the patentee. First. The usual presumption of validity is greatly fortified by the fact that all of the prior art patents which are now called to our attention were before the Patent Office when that tribunal was weighing the question of invention. Second. The great length of time that elapsed between the publication of the prior patents most strongly relied on and the application for the patent in suit. Those prior patents never made any impress upon the practical art of building and using concrete mixers, and are now brought to light only for purposes of defense. Third. Assuming for the moment that appellees' structure has not departed from their patent, a large and successful business has been built up; and machines of this type (made only by the parties involved in this cause) have taken, according to the evidence, a prominent place in the market for small portable concrete mixers.

IV. Infringement. There is no contention that appellees' commercial machine does not conform to the claims in suit in all respects except one; and that is in respect to "the tiltable frame in which the receptacle is supported." In the specific claims, which are addressed to the preferred form of structure, the tiltable frame is required to be in a plane to which the axis of the receptacle's revolution is perpendicular. In the claims in suit there is no limitation with respect to the relation of the plane of the frame and the line of the axis of revolution. And if the preferred form of tiltable frame were placed in a plane in which the line of the axis of revolution would lie, there would seem to be no basis whatever for saying that the structure would not be within the letter and spirit of the claims in suit. The real defense of noninfringement is that what is called a yoke in the commercial structure is not the tiltable frame of the claims in suit. The yoke has three sides. The portion of it at the bottom of the receptacle is longer than the diameter of the receptacle. From that portion uprights extend at each end up to the middle or largest diameter of the receptacle. It is evident that a pot-shaped receptacle, having about its middle a toothed gear to be driven directly by a pinion journaled in a supporting trunnion, could not be supported by a tilting structure having less than three sides. If the two parallel arms of the yoke were extended and a fourth side added, so as completely to embrace the receptacle, there could be no question that the frame was present. The function of the "frame" is solely to afford a tiltable support. In the yoke, or frame of three sides with one side omitted, there is plainly the essential supporting means of the claims in suit, for the receptacle is prevented from falling out of the open end of the three-sided frame

by means of a bolt which extends from the center of the bottom of the receptacle through the long member of the yoke and upon the end of which is threaded a nut. This nut manifestly opposes the movement of the receptacle in the fourth direction just as clearly as would a fourth side to the frame.

It is to be remembered that the specification told the persons who proposed to use the invention as described in the claims in suit that they could employ a frame of any form adapted for supporting the receptacle. Not only are the two forms the same in furnishing the tiltable support for the revoluble receptacle, but at the time Smith was speaking in his application the prior art showed that both forms were old and that each was adapted to afford a tiltable support for a revoluble receptacle. This fact is exhibited in the examinations we have hereinbefore made of the Day and Lampard and Taylor patents. Therefore we find that appellees' commercial structure was within their patent.

[3] Appellant's structure very plainly has been taken from appellees' commercial structure. They are exactly the same in operation and result. Two small differences appear. One is that the circular toothed rack is placed slightly away from the exact "largest diameter" or "middle" of the receptacle. The other is that the mouth of the pot-shaped receptable is prolonged so that the receptacle cannot be revolved through the 360 degrees by reason of striking the bottom of the circle. But the circular toothed rack is so near the largest diameter of the receptacle that all of the advantages of the patent are secured in that respect. And with respect to tiltability, all of the advantages of loading on one side and discharging on the other are obtained as fully as in the patented structure. Further, while claim 16, for example, speaks of tiltability throughout "the entire circle," that expression is modified by the clause, "whereby the receptacle may be filled from any point above it and discharged either from the right-hand side or the left-hand side of the machine." Crane Co. v. Baker, 125 Fed. 1, 3, 60 C. C. A. 138. These changes impress us as having been intentionally devised for the purpose of creating a verbal differentiation. But infringement is not thereby escaped, if the defendant has actually appropriated the real substance of the invention. Adam v. Folger, 120 Fed. 260, 56 C. C. A. 540; United States Metallic Packing Co. v. Hewitt Co. (D. C.) 220 Fed. 171.

We conclude that all of the claims in suit are valid and infringed except claim 5. That claim calls for a receptacle provided with "means for charging and discharging the same." "Means" is at once the singular and plural form. If this claim contemplates a receptacle with two openings, the claim reads literally upon the Day and Lampard structure. It seems to us however that the word, in view of the purposes and law of operation of the patent device, should be taken as the singular form; but when so taken the claim becomes in essence identical with claim 32. Lamson Store Service Co. v. Hillman, 123 Fed. 416, 59 C. C. A. 510; Veneer Machinery Co. v. Grand Rapids Chair Co., 227 Fed. 419, 142 C. C. A. 115.

The decree, except as to claim 5, is affirmed.