T. L. SMITH CO. et al. v. CEMENT TILE MACHINERY CO.

(District Court, N. D. Iowa, E. D. February 19, 1918.)

No. 28.

1. JUDGMENT ⊚⫸675(1)—PERSONS CONCLUDED—SUIT FOR INFRINGEMENT OF PATENT.

A decree in an infringement suit against the user of a machine, holding the patent valid and infringed, is conclusive on both such questions in a subsequent suit by the same complainants against the manufacturer of the machine, which admittedly participated in the defense of the prior suit and paid all or the greater part of the expense, but is not conclusive as to infringement by another machine made by defendant, which was not involved in that suit.

2. PATENTS ⊚⫸328—VALIDITY AND INFRINGEMENT—MIXING MACHINE.

The Smith patent, No. 803,721, for improvement in mixing machines, is valid, but is for a combination of old elements, and is limited to the means particularly described in the specification and drawings. As so limited, *held* not infringed.

In Equity. Suit by the T. L. Smith Company, the Jaeger Machine Company, and the Waterloo Cement & Machinery Company against the Cement Tile Machinery Company, now known as the Stewart Manufacturing Company. On final hearing. Decree for complainants on one cause of action, and for defendant on the second cause of action.

Suit for alleged infringement by defendant of United States letters patent No. 803,721, issued to the T. L. Smith Company, as assignee of Thomas L. Smith, November 7, 1905, for improvement in mixing machines, for an accounting of damages and profits, and injunction restraining the defendant from further infringing said patent.

George L. Wilkinson, of Chicago, Ill., and Alfred Longley, of Waterloo, Iowa, for plaintiffs.

John E. Stryker, of St. Paul, Minn., for defendant.

REED, District Judge. The patent in suit contains 32 claims, of which Nos. 16, 17, 18, 28, 30, 31, and 32 are alleged in the petition to have been infringed by the defendant. In December, 1914, the plaintiffs brought suit in the United States District Court for the Northern District of Illinois against one Edward Foster, a resident of Illinois, for the alleged infringement of said claims and No. 5, in which suit, upon the final hearing, judgment and decree went in favor of the plaintiffs in February, 1916, against said Foster for infringing said claims, with a judgment for damages, an order for an accounting, and injunction, which decree was affirmed by the United States Circuit Court of Appeals for the Seventh Circuit February 1, 1917, except as to claim No. 5, which was held by that court to be in effect identical with claim No. 32. A petition for rehearing was denied by the Circuit Court of Appeals July 26, 1917. See Foster v. T. L. Smith Co., 244 Fed. 946, —— C. C. A. ——. In the defense of the suit against Foster (which will be called the Foster suit), the alleged infringing

machine was manufactured by this defendant and by it sold to Foster; this defendant participated, employed solicitors, and paid or agreed to pay the greater part if not the entire cost and expense of the suit. After the final determination of that suit, the plaintiff brought this suit against this defendant, who resides in this district, alleging that defendant was in privity with the defendant Foster in the Foster suit, is concluded and bound by the final judgment and decree in that suit, and further alleging that defendant is continuing to infringe the plaintiffs' patent, and asks judgment and decree for the damages and other relief awarded against Foster in the Foster suit, and further damages because of continuing to infringe the patent in suit, and for the usual accounting of damages, and, preliminary and permanent injunctions.

The defendant has answered the petition, admitting the issuance of the patent to the plaintiff the T. L. Smith Company, the commencement of the Foster suit, and its result; that defendant made and sold to Foster the machine held in the Foster suit to infringe the plaintiffs' patent; that defendant participated in the defense of that suit, and paid the greater part or all of the expenses thereof, as alleged by the plaintiffs; but denies that it was in privity with Foster, or bound by the judgment or decree in that suit. The defendant further alleges the invalidity of the patent in suit, because anticipated by a number of prior patents and other devices in the prior art, and that since the commencement of the Foster suit it has made another mixing machine, which is different in material respects from the Foster machine, which does not infringe the plaintiffs' patent, nor any of the claims thereof herein involved.

[1] 1. The plaintiffs contend that the judgment and decree in the Foster suit is res adjudicata of every question involved in this suit, and that they are entitled to a judgment and decree against this defendant for the judgment and decree awarded against Foster; and counsel for defendant maintains that the decree in the Foster suit is not res adjudicata of any question involved in that suit, but is open to re-examination by this court of every question involved in that suit; also that defendant's present structure is not an infringement of any of the claims of the patent in suit involved herein, and was not involved or determined in the Foster suit. Upon the question of res adjudicata it is said in Southern Pacific Railroad Co. v. United States, 168 U. S. 1, at page 48, 18 Sup. Ct. 18, 27 (42 L. Ed. 355):

"The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of * * * person and property if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue and actually determined by them (citing many cases)."

And see Hart Steel Co. v. Railroad Co., 244 U. S. 294, 37 Sup. Ct. 506, 61 L. Ed. 1148, D'Arcy v. Staples & Hanford Co., 161 Fed. 733, 88 C. C. A. 600, and Elliott Co. v. Roto Co., 242 Fed. 941, —— C. C. A. ——.

I am therefore of opinion, upon the admission of the answer, that the decree in the Foster suit is res adjudicata of the question of the validity of the patent in suit and of its infringement by the Foster machine.

[2] 2. The defendant's present machine was not involved in the Foster suit, and was not in fact made or put into practical use by it until shortly before its final determination. That suit is not, therefore, an adjudication that defendant's present machine infringes the plaintiffs' patent. Cromwell v. Sac County, 94 U. S. 351, 24 L. Ed. 195; Packet Co. v. Sickles, 5 Wall. 580, 592, 18 L. Ed. 550; Russell v. Place, 94 U. S. 606, 608, 24 L. Ed. 214, and cases cited; Bates v. Bodie, 245 U. S. 520, 38 Sup. Ct. 182, 62 L. Ed. ——. The claims of the patent involved herein, with Figures 1 and 3 of the drawings, are set forth in the opinion of the Circuit Court of Appeals in the Foster suit (244 Fed. 946, —— C. C. A. ——), to which reference is made for said claims and drawings, and to the patent in suit for others of the drawings. The Circuit Court of Appeals, in its opinion in the Foster suit, said of the Smith patent:

"Smith's most general conception of his machine as an entirety is probably best stated in claim 32"

—which claim reads in this way:

"In a mixing machine, the combination of (1) a mixing receptacle having one clear and unobstructed opening for feed and discharge concentric, or substantially so, with the axis of revolution; (2) a tiltable frame supporting said receptacle; (3) means for tilting said frame either to the right or to the left of the loading point; (4) a circular toothed rack disposed around the middle of said receptacle; (5) a bevel pinion engaging said toothed rack and journaled in the tilting axis; and (6) means for connecting said pinion with the source of power."

Others of the claims involved also state in a general way the same essentials of the Smith structure in its entirety. Those elements, aside from the mixing receptacle and the tiltable frame, are elements 3, 4, and 5 of claim 32, and similar elements of claims 28, 30, and 31, to the end that the receptacle may be tilted to the right or to the left of its loading point, and this for the very obvious purpose of discharging or unloading its contents either to the right or to the left side of the loading point, or at any point within the entire circle of its revolution, which the Circuit Court of Appeals held, are essential elements of the Smith invention, an improvement upon the Taylor patent of August 5, 1890, No. 433,663, and distinguishes it from that patent. Speaking of the Taylor patent the Circuit Court of Appeals said:

"The machine is supported upon a fixed frame. A tiltable yoke is supported by means of trunnions upon the fixed frame. Within the yoke is supported a receptacle of the pot or jar form. To the bottom of the receptacle is attached a bevel gear, which is engaged by a beveled pinion on a shaft, which is housed in the tilting yoke and carries at its outer end a spurred gear, which in turn engages another spurred gear, mounted to rotate around the

axis of one of the trunnions. The receptacle is thus rotated by means of two parallel shafts, two spurred gears, and two beveled gears. As the spurred gears are outside, and the beveled gears inside, of the stationary frame, the shaft, which is housed in the tilting yoke, limits the tilting, so that the re-ceptacle can be loaded and discharged only on one side of the stationary frame. This Taylor structure lacks the Smith purpose and means of tilting, and likewise the simple and direct rotating means, both of which are essential elements of the Smith combination."

This quite clearly indicates that in the opinion of the Circuit Court of Appeals the Smith invention was not anticipated by the Taylor structure, and that the Foster machine so differs from the Taylor machine that it is an infringement of the Smith device. The Taylor patent expired in 1907, and its disclosures were at large thereafter.

The defendant's present device is a portable structure mounted on wheels, was exhibited in court at the hearing, and illustrated by a blueprint in evidence, marked "Defendant's Exhibit A" and "Plaintiff's Exhibit I" (attached hereto).

Defendant's Exhibit A—Plaintiff's Exhibit I.

The device and its mode of operation, as shown by the blueprint, may be stated substantially as follows: A rigid main frame *A* forming the body of a wheeled vehicle having upright end supports *B* and *C*. Upon this main frame is swung a tilting frame *D,* the upper ends of which are swung from solid trunnions *E* and *F*; the shaft *E* being mounted in support *B* and *F* journaled in support *C*. Mounted upon an upright

bearing $X$ set in the lower portion of the frame $D$, the axis of which is at right angles with the axis of the trunnions $E$ and $F$, is a bowl-shaped receptacle $G$ formed with a tapering mouthpiece $H$ resembling a hollow truncated cone and half encircled by the tilting frame $D$. Rigidly mounted upon the inner side wall of this receptacle is a blade $I$, which assists in causing the contents of the receptacle to mix when it revolves on its bearing $X$. To revolve the receptacle and mix its contents is a toothed circular rack $J$, encircling the body of the receptacle a little below its center, with its axis in line with the axis of the receptacle and a driving countershaft $K$ journaled in the bearing $I$, on the support member $B$, said rack being revolubly connected with the countershaft $K$ to revolve the receptacle by means of intermeshing toothed gears $O$ and $P$; gear $O$ being mounted rigidly on the countershaft $K$, and the gear $P$ journaled on the stud $E$, its teeth also meshing with the teeth of the rack $J$. Power is applied to the countershaft $K$ through a large gearing $Q$. To dump or unload the contents of the receptacle it is tilted about the axis of the trunnions $E$ and $F$ by a tooth gear $R$ mounted upon the trunnion $F$ intermeshing with the pinion $S$, which is journaled on the support $C$ and provided with a handle $T$ by which its movement is controlled. By turning the handle $T$ the receptacle is tilted on the trunnion $F$ and tilting frame $D$, and its movement is limited to a movement through an arc of a circle by the frame $D$ striking the bearing $L$, so that the receptacle will only discharge its load on the side or end opposite the loading point, and by dropping the pawl $U$ into engagement with the teeth of the gear wheel $R$, the receptacle may be held in any selected position between its loading and discharging points while the revolution on its bearing $X$ is free to continue or stop. The stud $E$, upon which the gear $P$ revolves, is lubricated from an oil cup $V$ through the duct $W$ leading to the bearing surface. It is impossible for the frame $D$ to make a complete revolution upon the trunnions $E$ and $F$, because the arc of the circle, through which it can only swing, will cause it to strike the bearing $L$, when turned in either direction.

The particular gearing which the Smith patent describes for rotating its receptacle comprises the circular support $22$ (Figs. 2, 3, and 4 of the drawings) in which the mixing receptacle is mounted, having an annular set of teeth $24$, with which the teeth of the pinion $11$ mesh, said pinion being mounted upon the inner end of the drive shaft $10$ journaled in the tubular trunnion $9'$. The shaft $10$ being driven by the pulley $12$ (Fig. 1) revolves the receptacle directly without the use of any countershaft or intermediate gearing. The defendant's means for performing this function is the counter drive shaft $K$, and a train of at least three gears, while in the complainants' patent, the driving means described is direct from the pulley $12$ through a single shaft mounted in the tubular trunnion $9'$, which was also the construction of the Foster machine, both of which are materially different from the defendant's present structure.

The Circuit Court of Appeals further said of the Smith machine:

"By having a 'middle' part, as in a pot or jar, the tilting means and likewise the rotating means are applied substantially in line with the center of gravity of the loaded receptacle, and therefore both movements may be most

readily effected, and also the driving pinion, journaled in the tilting axis, may thus engage the toothed rack on the periphery of the receptacle without the use of intermediary gears or other driving means."

The defendant's present structure plainly differs in essential particulars from the plaintiffs' combination, and its receptacle can only be rotated by means of two parallel shafts, one a countershaft, two spurred gears, and at least one intermediary gear meshing with them, and in use will not accomplish the result that the Smith machine accomplishes, in that its receptacle may be discharged or unloaded on either side of its loading point, while the defendant's receptacle can only be unloaded upon one side or end of the same, and that opposite its loading point.

The Smith patent is for a combination of old elements, and is within narrow limits to be accomplished by means particularly described in the specifications and drawings of the patent. Of such patents the Supreme Court in Electric Signal Co. v. Hall Signal Co., 114 U. S. 87, said at page 96, 5 Sup. Ct. 1069, 1075 (29 L. Ed. 96):

"To constitute identity of invention, and therefore infringement, not only must the result attained be the same; but, in case the means used for its attainment is a combination of known elements, the elements combined in both cases must be the same, and combined in the same way, so that each element shall perform the same function, provided, however, that the differences alleged are not merely colorable, according to the rule forbidding the use of known equivalents."

To the same effect are Fay v. Cordesman, 109 U. S. 408, 420, 3 Sup. Ct. 236, 27 L. Ed. 979; Thompson v. Boisselier, 114 U. S. 1, 11, 14, 5 Sup. Ct. 1042, 29 L. Ed. 76.

I am therefore persuaded that defendant's present structure does not infringe plaintiffs' patent. It follows that plaintiffs are entitled to a judgment and decree against the defendant for the award in the Foster suit, with costs, upon the question of the validity of the patent, but that the petition must be dismissed, at plaintiffs' costs, so far as it claims infringement by the defendant's present structure; and it is so ordered.

A decree may be prepared accordingly, in which each of the parties is given 30 days in which to prepare the record on appeal, if either of them shall take an appeal.