KNIGHT v. TOLLNER ELECTRIC CO., Inc.
No. 4463.

District Court, E. D. New York.
July 22, 1930.

Dean, Fairbank, Hirsch & Foster, of New York City (Clair W. Fairbank, and S. Augustus Demma, both of New York City, of counsel), for plaintiff.

Pennie, Davis, Marvin & Edmonds, of New York City (Wm. F. Freudenreich, of Chicago, Ill., of counsel), for defendant.

BYERS, District Judge.

The plaintiff is the patentee under letters patent Nos. 1,210,492, granted January 2, 1917, and 1,302,057, granted April 29, 1919, of an improvement in a box in which electric conduits form a junction, called Outlet boxes, used in wiring buildings.

The device is composed of metal, resembling in appearance an inverted cup, and is placed in position by nailing the peripheral wall to the wooden form upon which a so-called concrete arch is poured; when the concrete has sufficiently hardened, the form is pulled away, leaving the box imbedded in the arch. The sides of the box contain apertures through which the conduits are introduced. The top of the device is removable to admit of overhead access, and the construction of that portion of the box presents the present controversy.

The plaintiff's first patent was applied for August 23, 1912, and was pending for almost seven years. From the outset, it is apparent that the plaintiff had in mind a cover or top wall of the box, which should embody not only removability to admit of overhead access, but an integral member extending beyond the vertical walls of the box, capable of accepting a stud in the center of the top, to sustain the weight of a fixture or chandelier, the support of which would rest not only upon the walls of the box, but (by reason of the projection of that member) in the concrete field surrounding the box.

Eighteen months after the first application, the second was filed, on February 25, 1914, and it was therefore pending for over two years in the Patent Office, prior to the granting of the first.

The second patent described the box, and a circular top wall, to be secured to the peripheral wall after the pouring of the concrete, the top wall being of a materially larger diameter than the peripheral wall, i. e., the top extended in all directions to constitute anchorage within the concrete and, depending from said top wall, was the fixture support or stud, supported primarily by the anchorage which was exterior to the vertical walls of the box.

The defendant sells a competing device, manufactured by the Appleton Electric Company, which faithfully copies the plaintiff's structure; there being in evidence two examples, i. e., square boxes, one with a circular top, and the other with a square top, both extending beyond the vertical walls to the same extent as in the plaintiff's structure.

The contentions of the defendant are:

(a) *There is no infringement* on the part of the square topped box, because the plaintiff's second patent describes a "circular" top wall.

It is held that the plaintiff's invention is as much infringed by the square top of the defendant's box as by its circular topped model. It was the adaptation of the anchorage feature first embodied in the transverse member, and then improved so as to merge in and become a part of the top wall, which constituted the invention set forth in the second patent.

In other words, it was a top wall which extended outwardly in all directions from the peripheral wall which constituted the second box an improvement over the one the top wall of which extended only in two opposite directions through the agency of the transverse bar.

The word "circular" in the claim cannot be held so to limit the plaintiff's rights as to permit the defendant to accomplish, by using a square cover, what would be denied through the use of a round one.

It is believed that this is an appropriate case for the application of the principle of equivalents as expounded in Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122. See also Hutter v. De Q. Bottle Stopper Co. (C. C. A.) 128 F. 283; Foster v. T. L. Smith Co. (C. C. A.) 244 F. 946, at page 954.

The defendant's brief asserts: "The purpose of the extended round cover is not, however, to provide a negligible additional holding means for the box or fixture, but to guard against carelessness of workmen in using the box." This loses much of its effectiveness when contrasted with the catalogue of the Appleton Electric Company (which is defending this suit as the maker of the infringing device), which contains the following:

"All plates are larger than the ring, therefore prevent the concrete from entering while pouring, insures a positive anchorage in arch and box will not pull out during the pulling of wires or wooded forms."

Infringement by both models is held to have been shown, as to both patents.

(b) *Lack of invention.*

The defendant argues that the Shea patent, No. 768,545, cited by the Examiner in the second Knight application, but not in the first, should have been held a bar to the first. The file wrapper in the second patent indicates the extent to which consideration of the Shea patent was given by the Examiner who twice rejected because of it, before final allowance was had. No reason has been shown by the defendant for deciding that the Examiner was wrong.

The extension of the base-plate of the Shea box did not embody the anchorage feature in cement, which was the fundamental concept of Knight in these two patents. The Shea top wall or cover was necessarily affixed to the peripheral walls before the box was poised to receive the wires or conduits.

It is next urged that Wittenberg, No. 1,-144,517, improvement in Junction boxes anticipates Knight's first patent. Neither the specifications nor the claims so indicate; i. e., there is no anchorage claim in behalf of a fixture to be sustained from the top wall, or from a member constituting a part thereof.

Reliance is next placed upon Caine, No. 1,156,885, an adjustable supporting bracket for outlet boxes. The plaintiff's patents cover boxes, not brackets. Caine's brackets are fastened to ceiling joists and are not box-extensions imbedded in concrete.

Finally, reliance is placed upon Boynton, No. 1,229,578, covering outlet boxes. This was cited by the Examiner in the second Knight application, but was withdrawn upon further consideration.

Nothing in the specifications or claims asserts the anchorage feature of a top wall which projects beyond the vertical walls of the box. The Patent Office disposition of this

element in the situation seems to require no reconsideration in this court.

It is argued that the second Knight patent should not have been issued because it was anticipated by the first. The effort has been made to point out that the idea embodied in the first, while also common to the second, was expanded and improved and differently applied therein, doubtless in the light of experience in production and in use.

The defendant has offered no expert opinion to fortify its views concerning the effect of the prior state of the art upon the plaintiff's patents, and, in the absence of any more complete showing than has been made, the conclusion is reached that the plaintiff's two patents in suit are valid, and that the defendant has infringed them both.

The usual decree may be taken by plaintiff, and, if damages cannot be stipulated, an accounting may be had.