# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### CRANE CO. v. BAKER.*

(Circuit Court of Appeals, Seventh Circuit. April 14, 1903.)

#### No. 940.

1. PATENTS—INVENTION—CAR-HEATER.
   The Baker patent, No. 472,689, for a car-heating apparatus, was not anticipated, and shows patentable invention, taking into account the history of the device since the patent issued, which shows its superiority in operation over the old devices and its displacement of them; also *held* infringed as to claim 1.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Paul Synnestredt and F. W. H. Clay, for appellant.
Clifford E. Dunn, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge. The claim and so much of the specification as relates thereto are as follows:

"In car-heating apparatus it has heretofore been usual to provide an expansion-vessel above the body of the car, into which the pipes from the heating apparatus ascend, so that the water circulates through the expansion-vessel in heating the car. There is more or less leakage in the apparatus, involving a loss of water that has to be made up from time to time by filling water into such expansion-vessel to keep the same at the proper height; and a supply-cock has been used with a funnel connected by a screw-coupling, but when the supply-funnel is left in its position for use it is liable to become charged with cinders and dust. In my present improvements the supply-funnel and the screw connecting it to the cock are constructed in such a manner that when the funnel is turned up into position for use the screw is tightened. The cock is screw-threaded at one end and screwed into the

---

* Rehearing denied October 6, 1903.

125 F.—1

expansion vessel at or near the water-line, and at the outer end of the cock is a screw-socket, receiving the screw-threaded end of the funnel, and the parts are constructed in such a manner that when the collar is screwed up firmly against the end of the socket the funnel will be vertical and in position for the reception of water for the expansion-vessel, and when the water has been filled in through this funnel the attendant simply gives the funnel a half rotation, partially unscrewing it, and the funnel hangs downward, and is not liable to become detached and cannot become obstructed by cinders or dust. * * * I claim as my invention: (1) The combination, with the expansion-vessel and the cock having a horizontal screw-threaded socket, of the funnel having a bend and a horizontal screw-threaded connection to the cock, whereby the funnel is allowed to hang down when partially unscrewed and held firmly by the friction when turned up for use, substantially as specified."

The combination of an expansion-vessel, a cock, and a funnel with bent neck attached to the cock by a screw-threaded connection, was old. . For many years preceding 1892 the parties to this suit had been using such a combination in filling car-heaters. From the first it was known that the funnel, if left upright, would become choked with cinders and the cock injured, and consequently the construction was such that the funnel could be turned down when not in use. This was its usual position, as it was only in use a few minutes at a time at long intervals. In the old filling apparatus the connection between the funnel and cock was made by means of a union nut or swivel joint, the sleeve, interiorly threaded, being set loosely upon the shouldered neck of the funnel, and drawing the beveled end of the funnel into the correspondingly ground opening in the cock by engagement with external threads on the outer end of the cock. It is evident that the funnel could be set at any position and held firmly by tightening the union nut; that when the nut is tight the funnel could probably not be turned without danger of breaking unless the nut were loosened; and that when the nut is loose the mere turning up of the funnel from its down position could have no effect in tightening the joint or holding the funnel firmly in an upright position. The testimony of witnesses who had used the old-style apparatus for years shows that the brine used in filling the heating pipes corroded the threads of the union nuts; that the use of a wrench was necessary to loosen them when that could be done at all; and that very frequently in the attempt the nuts or cocks or funnels were broken.

In the new apparatus the patentee joined the funnel to the cock by threading the funnel exteriorly and the cock interiorly, and by putting a shoulder upon the funnel at such a point that when the funnel was turned from a downward to an upright position the shoulder abutted against the end of the cock, making a tight joint and frictionally holding the funnel in place. It is evident that by this construction a tight joint can be made and the funnel held in position by friction only when the funnel is upright; that when not in use the funnel hangs loosely in the threads; and that, when the attendant comes to use the apparatus, he finds the funnel loose, and makes a tight joint, and fastens the funnel in place for use by the act simply of turning the funnel to an upright position. The testimony of witnesses who have used the new-style device shows that there is not so much corrosion ·

that the corrosion does not interfere with the successful operation of the new device as with the old; that a wrench is unnecessary; and that the disadvantages besetting the old device have been overcome.

In the patents relied upon as anticipatory, No. 288,708, November 20, 1883, to Johnson and Buerkel, and No. 461,280, October 13, 1891, to Searle, there is no disclosure of the means by which the funnel is connected with the cock, much less that the connection would permit the funnel to hang down loosely in the cock, and cause a tight joint, and hold the funnel in place for use merely by moving the funnel to an upright position. If there is anticipation, it is in the old device hereinabove described. And in considering that question it is necessary to bear in mind also that in the art of fitting steam or water pipes a direct screw-threaded connection and a union nut were used as equivalents, the selection depending upon the particular workman's idea of convenience or suitability at the place; that in making a direct screw-threaded connection the fitters were accustomed to use the elbow, if present, as a means of turning up the pipe, instead of taking a wrench; and that, if desired, the limit of turning one part upon another could be determined by ending the threads at the proper point. If the patentee in this case has only substituted a well-known equivalent for one of the elements in an old combination, performing the same function, the claim cannot stand. Construed as a claim for a combination of an expension-vessel, a cock, and a funnel with bent neck attached to the cock by a screw-threaded connection, it is bad because it includes the old device. But the claim, limited by the "whereby" clause and the specification, we think is for a combination of the expansion-vessel, the cock having a screw-threaded socket, and the bent-necked funnel having such a screw-threaded connection with the cock that the funnel is allowed to hang down loosely when not in use, and the mere act of turning it up for use necessarily or automatically makes a sufficiently tight joint between the shoulder of the funnel and the end of the cock, and frictionally holds the funnel in place. We think that the described screw-threaded connection in this combination is not the mere equivalent of a union nut; that in effect another element, the shoulder, has been introduced, making a different combination; and that the new combination produces a result wanting in the old, namely, the automatic action of the shoulder of the funnel upon the end of the cock in making a sufficiently tight joint, and frictionally holding the funnel at the right point and at no other.

It has not been without doubt and hesitation that we have found invention in this improvement, considering the case irrespective of the history of the device since the patent issued. But, adding to the view that history, which shows a successful overcoming of difficulties and disadvantages that were known for many years to builders, repairers, and users of car-heaters, an almost universal replacement of the old devices, as they wear out, by the new, and the tribute of imitation, we have felt that the doubt should be resolved in favor of upholding the patent.

The claim being valid, infringement is undoubted, as appellant uses the very structure.

'Appellant urges that there was such delay on the part of appellee and her assignor that a court of equity should not entertain this suit. We have carefully read the entire record, and find nothing in it to indicate that any owner of the patent has dedicated the device to the use of the public or estopped himself from claiming the benefit of the grant. We think the court below gave appellant the full benefit of the delay by limiting the reference as to profits and damages to the time since January 4, 1901, when appellee notified appellant to cease infringing. A question is mooted by appellee whether at the accounting she may go back of the date named, but we think it unnecessary to express any opinion thereon at this time.

We find no error in the court's permitting the hearing to be reopened and a stipulation and certain letters to be introduced by appellee and made a part of the record. This was within the court's discretion.

The decree is affirmed.