### BREWER v. LICHTENSTEIN et al.

(Circuit Court of Appeals, Seventh Circuit. January 3, 1922.)

No. 3050.

Patents ⬒328—780,086, for vending device, held void for lack of lawful utility and invention.

The Brewer patent, No. 780,086, for a vending device or punch board intended for use as a lottery device, *held* void for want of lawful utility, and also for lack of invention, in view of the prior art.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by Charles A. Brewer against Leo Lichtenstein and Sol Harrison, doing business as the Harlich Manufacturing Company. Decree for defendants, and complainant appeals. Affirmed.

Russell Wiles, of Chicago, Ill., for appellant.

Samuel W. Banning, of Chicago, Ill., for appellees.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

BAKER, Circuit Judge. Appellant's bill to enjoin infringement of the three claims of his patent, 780,086, January 17, 1905, for a "vending device," was dismissed for want of equity. Lack of lawful utility and lack of invention were the defenses.

In the specification the object and the form of the device are thus described:

"The object for which the invention is principally designed is to promote the introduction and sale of merchandise, principally of that class which is retailed in separate pieces or packages at a uniform price per piece or package—such, for instance, as chewing gum, cigars, etc.—and this we accomplish through a novel mode and instrumentality of advertising and vending a line of goods involving the sale of orders for the goods, accompanied by orders for a limited number of premiums or gifts that are distributed with the goods.

"The form which we have chosen as the preferred mechanical embodiment of the invention consists generally of a receptacle containing a series of pockets or holders for written or printed order slips or equivalent order mediums, which latter are confined within the respective pockets or other holders of the receptacle by a frangible device which serves to entirely conceal from

⬒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

sight the order itself, in association with an ejecting device by which the orders may one at a time be dislodged from the receptacle. In practice the receptacle will have prominently displayed thereon an announcement or advertisement of the goods for the sale of which it is instrumental, and the orders confined in the holders of the receptacle will call for a package or other fixed quantity of the article advertised, while a limited number of the holders may also contain orders for premiums or gifts, either separate articles or a certain value in trade. A customer will pay a certain sum—say five cents— for the privilege of ejecting or withdrawing an order from the device, which order will call for at least a quantity of the goods advertised to the retail sale value of the price paid for the privilege and in some instances for a premium or a gift. Preferably and as herein shown and described the series of order holders or containers will be sealed, and the orders themselves will be obtainable on the part of the customers by ejecting them from their sealed receptacles after paying the price charged for the privilege by means of the ejector, which breaks the frangible seal and removes the printed order slips therefrom."

Claim 1 is as follows:

"1. In a device of the character described, the combination with a receptacle containing a series of apertures, of removable objects in said apertures, frangible means serving to retain said objects in place and concealing the same, and a device adapted to break said frangible retaining means, substantially as described."

I. *Utility.* The element which in claim 1 is defined as "frangible means serving to retain said objects in place and concealing the same" appears in claim 2 as "perforable covering sheets applied to both sides of said board and sealing the ends of said perforations," and in claim 3 as "paper sheets applied to the opposite surfaces of said board and sealing the perforations therein." It is to be noted that this element in the "punch board" is not merely "frangible means serving to retain said objects in place," but is frangible means so used as to "conceal the objects in the holes or pockets in the board." A patent claim for a structure which otherwise would be void may be valid solely by reason of the limitation of an element by a "whereby" clause, if the limitation calls into being a new combination that produces a new and useful result. Crane Co. v. Baker, 125 Fed. 1, 3, 60 C. C. A. 138. In appellant's patent, as the specification and claims clearly disclose, the utility of the limitation of the covering element to a concealing means was to enable the gambling instinct of purchasers to be appealed to in promoting the sale of merchandise. No other utility than as a lottery device (in promoting sales or for similar uses) is suggested in the patent; and the claims themselves exclude any combination in which the element of the concealing means has no useful function.

As a basis for argument appellant exhibited a punch board made up so that the pockets in the first column each contained a five-cent order for a drink of soda water, in the second column each contained a ten-cent order, and so on. And over each column was a printed statement of what the pockets contained. The suggested utility was that each purchaser, in punching out his order, would leave a hole as a registration of the sale, and that the proprietor, by counting the holes at the end of the day, would have a way of computing his sales tax. As an accounting system that supposititious punch board might be as use-

ful as making chalk marks on the wall behind the counter; but the point is that in such a use concealment plays no part.

At the oral argument appellant asserted, correctly enough, that not all drawings of lots are illegal, and suggested the case of two candidates who are directed by law to resolve a tie by drawing lots and also the case of the government's determining by lot the order in which eligible conscripts should go to war. But those instances seem to us to be beyond the range of any practical utility with which the patent law is concerned.

Appellant cites Fuller v. Berger, 120 Fed. 274, 56 C. C. A. 588, as analogous. In that case the device of the patent was a "bogus coin detector." It was invented as the result of a demand by a manufacturer of coin operated banjo playing instruments for a device to protect the musical instrument from being set in operation by means of bogus coins. Up to the time of the trial the only use to which the patented device had been put was to protect coin operated gambling machines. But the mechanism of the detector had no connection with the mechanism of the machine to which it was attached. It was a separate entity, quite as capable of protecting an innocent musical instrument as a vicious gambling macine. Inasmuch as the specifications and claims had nothing to do with the selection of the thing to be protected, the patent was held to cover a lawful device, and the illustration was given that a patented revolver should not be blamed if, without its own volition, it found itself in the hands of a burglar instead of a policeman.

II. *Invention.* In view of the Kuenzell patent, 499,124, June 6, 1893, wherein the patentee described and claimed "a box or case divided into a series of parallel compartments open at both ends, and fabric membranes adapted to be punctured and closing both ends of the series of compartments, whereby the finger may be pushed through one membrane to force the desired article from its compartment and through the opposite membrane," we think there was no invention. Kuenzell's box and appellant's punch board are identical. Kuenzell directs the user to burst the membrane with a finger, and appellant with a "device" or "ejector" or "plug." This difference is immaterial. "Whether the power be mediately or immediately human seems to us indifferent." Krell Auto Grand Piano Co. v. Story & Clark Co., 207 Fed. 946,953, 125 C. C. A. 394. The only other difference is that Kuenzell's membrane may be transparent, in order to permit the purchaser to see the article within the receptacle, while appellant's covers must be concealing means in order to constitute a lottery device.

The decree is affirmed.