32 N.J. Super. 95 (1954)
107 A.2d 811
RUTH E. TESTUT, PLAINTIFF-RESPONDENT,
v.
RICHARD S. TESTUT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 1954.
Decided September 16, 1954.
*97 Before Judges EASTWOOD, GOLDMANN and SCHETTINO.
Mr. Benjamin M. Ratner argued the cause for respondent (Miss Elsie Rand, attorney).
Mr. Morris N. Hartman argued the cause for appellant (Messrs. Herr & Hartman, attorneys and of counsel).
The opinion of the court was delivered by GOLDMANN, J.A.D.
Defendant husband appeals from two orders of the Chancery Division respectively dated March 2 and May 11, 1954. By order of this court entered May 24, 1954 defendant was permitted to deal with both these orders in one appeal.
Plaintiff had obtained a judgment nisi for divorce on March 22, 1950. Incorporated therein and made a part thereof was an agreement executed by the parties on October 4, 1949 by whose terms defendant, among other things, agreed to pay $100 per week (or, at his option, $430 a month) in advance, as and for alimony for the wife (40% of the amount) and support for the three children (20% for each). Defendant *98 subsequently remarried. On February 25, 1953 plaintiff moved to modify the judgment nisi by increasing the alimony and support provisions, alleging that there had been a "substantial change of circumstances" since the date of the making of the agreement. Both parties testified at the hearing on the motion held April 29, 1953.
On June 10, 1953, and before the trial judge had made any determination, defendant's attorney wrote him requesting that he examine the children before the matter was concluded. This letter was designed to bring to the court's attention the fact that the children had known nothing of their mother's application for an increase, that they were living comfortably and lacked nothing, and were concerned only with the college educations which their father had promised to provide. Two days later the trial judge wrote counsel that he would allow an increase of $25 a week for the support of plaintiff and the children as long as defendant continued to carry the insurance policies he had taken out for the benefit of the children. These policies were intended to protect their college education in case of the father's death. The letter further informed counsel that in the event the policies were cancelled, the support would be increased by $40 a week instead of $25. Defendant's request that the court speak to the children before determining the matter was never answered.
During the summer of 1953 a child was born to defendant and his second wife. The older son by the first marriage lived with defendant that summer and worked at a job he had secured for him, with the result that the boy saved over $400. The younger son also secured summer employment through plaintiff's brother. In the light of these facts and the additional financial burden cast upon defendant for medical bills incurred because of the birth of the child and medical treatment for his new wife, and since no order had as yet been entered on the trial court's letter decision of June 12, defendant on October 23, 1953 moved, on affidavits, for (1) a rehearing of plaintiff's motion for modification of the agreement incorporated in the judgment nisi; (2) for *99 a reduction of the allowances contained therein; and (3) for an order granting him partial custody of the older boy and full custody of the younger one. Answering affidavits were filed by plaintiff, and a reply affidavit by defendant. It may be observed at this point that defendant's affidavits set out in some detail facts which should have persuaded the court to allow the application for a rehearing.
Before defendant's motion was determined, his attorney, by letter dated November 10, 1953, applied for the taking of oral testimony on the motion, setting out legal precedents justifying the relief sought. On November 23, 1953 the trial judge wrote counsel denying defendant's application to reopen the hearing, stating that if defendant "now claims a change of circumstances since April 30, 1953, he is at liberty to bring a new application for modification and submit the facts to the court."
The order of March 2, 1954 modified the provisions of the judgment nisi by increasing the provisions for support and maintenance from $100 to $125 a week so long as defendant continued to carry the life insurance policies for the benefit of the three children of the first marriage, and in the event the policies were cancelled the amount would be increased to $140 a week. This order was made retroactive to June 12, 1953. The order of May 11, 1954, among other things, denied defendant's application for a rehearing of plaintiff's motion for modification of the judgment nisi, as well as his applications for a reduction and for custody.
We take special note that the court did not, prior to entering these two orders, find the facts specially and state separately its conclusions of law thereon. It could have done so in writing or by dictating its findings and conclusions to the court stenographer in open court. Nor did the trial judge file an opinion or memorandum of decision prior to entry of the orders. R.R. 4:53-1, which closely follows Federal Civil Rule 52(a), as amended, 28 U.S.C.A. p. 13. We may look to the federal decisions for guidance in construing the rule. See Lang v. Morgan's Home Equipment Corp., 6 N.J. 333, 338 (1951).
*100 The requirement that the court, in a contested case tried upon the facts without a jury  such as here  "shall find the facts specifically and state separately its conclusions of law thereon," or file an opinion or memorandum of law in lieu thereof, is mandatory and must be fairly complied with. Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 316, 60 S.Ct. 517, 84 L.Ed. 774 (1940); Smith v. Dental Products Co., Inc., 168 F.2d 516, 518 (C.C.A. 7 1948). The purpose of the rule is threefold: (1) to aid the trial court in making a correct factual decision and a reasoned application of the law to the facts; (2) to define for purposes of res judicata and estoppel by judgment the issues then adjudicated; and (3) to aid the appellate court on review. 5 Moore, Federal Practice (2d ed. 1953), § 52.03[3], p. 2632; Committee Note to the 1946 amendment to Federal Rule 52(a).
R.R. 4:53-1 does not place too heavy a burden upon the trial judge, for he "need only make brief, definite, pertinent findings and conclusions upon the contested matters," and these may be a part of his opinion or memorandum of decision. Committee Note to the 1946 amendment to Federal Rule 52(a); United States v. Forness, 125 F.2d 928 (C.C.A. 2 1942), certiorari denied 316 U.S. 694, 62 S.Ct. 1293, 86 L.Ed. 1764 (1942); United States v. Crescent Amusement Co., 323 U.S. 173, 65 S.Ct. 254, 89 L.Ed. 160 (1944).
The requirement that the trial judge file findings of fact and conclusions of law is not merely for the convenience of the upper court on appeal. While it does serve that end, it has the far more important purpose of evoking care on his part in ascertaining the facts and the applicable law. United States v. Forness, supra, 125 F.2d at page 942, where Judge Frank said:
"For, as every judge knows, to set down in precise words the facts as he finds them is the best way to avoid carelessness in the discharge of that duty: Often a strong impression that, on the basis of the evidence, the facts are thus-and-so gives way when it comes to expressing that impression on paper. The trial court is the most *101 important agency of the judicial branch of the government precisely because on it rests the responsibility of ascertaining the facts. When a federal trial judge sits without a jury, that responsibility is his. And it is not a light responsibility since, unless his findings are `clearly erroneous,' no upper court may disturb them. To ascertain the facts is not a mechanical act. It is a difficult art, not a science. It involves skill and judgment. As fact-finding is a human undertaking, it can, of course, never be perfect and infallible. For that very reason every effort should be made to render it as adequate as it humanly can be."
The duty of the judge to find the facts specially and state separately his conclusions of law thereon, or to file an opinion or memorandum stating the facts and the court's opinion on the law, should logically precede the entry of the appropriate judgment. The judgment represents the ultimate discharge of the judicial function and must necessarily reflect the judge's findings and conclusions  the end product of his mental processes. See 53 Am. Jur., Trial, § 1136, p. 792; 64 C.J., Trial, § 1075, p. 1231.
Orderly judicial procedure requires that the judgment come last, and this is so not only for the reasons stated but must follow from a fair reading of our rules of court. R.R. 4:53-1 states that "the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." The sequence of words and steps is not without significance. In addition, there is the requirement of R.R. 4:53-2 that a party must move before the court not later than ten days after entry of judgment for amended or additional findings. See, as to the intent of parallel Federal Rule 52 in its entirety, 5 Moore, Federal Practice (2d ed. 1953), § 52.06[4], p. 2666 and § 52.11[1], p. 2679, holding that the rule clearly contemplates that findings be made and filed prior to the entry of judgment.
The ten-day period under R.R. 4:53-2 may not be enlarged. R.R. 1:1-9 (now R.R. 1:27B) and R.R. 4:6-1. Suppose the judge had filed his findings of fact and conclusions of law, or his opinion or memorandum of decision, more than ten days after the filing of the orders. Defendant *102 could not have moved for amended findings or additional findings before the ten-day period had elapsed because there were no findings or conclusions toward which a motion could have been directed. Any motion made after the filing of the findings and conclusions, or the opinion or memorandum, would then have come too late. It is even possible to imagine a situation where the judge filed his findings and conclusions, or the opinion or memorandum, some time after the time for appeal (R.R. 1:3-1) had run. In such case the appellant would be at a distinct disadvantage in preparing his appeal; all he would have would be the judgment, without the underlying thoughts and reasoning of the judge.
A careful review of the record convinces us that defendant's application for a rehearing should have been granted. He was entitled to have the court consider the complete picture of needs and resources, and it was no answer that he was at liberty to bring a new application for modification at a later date. Such procedure seems neither desirable nor consistent with the policy and spirit of the rules, which were designed to advance justice and facilitate the disposition of controversies without unnecessary delay and expense. R.R. 1:1-8. Cf. Gonzales-Fantony v. Fantony, 31 N.J. Super. 14, 19 (App. Div. 1954). The trial court's refusal to grant a rehearing was not consistent with a sound exercise of judicial discretion, which must not be arbitrary, vague or fanciful, but must be lawful and regular. State v. Standard Oil Co., 5 N.J. 281, 307-308 (1950); Cortese v. Cortese, 10 N.J. Super. 152, 158 (App. Div. 1950).
Under the circumstances of this case and in the exercise of sound judicial discretion, the trial court should have granted defendant's motion in the interests of justice. Its refusal of a rehearing has imposed upon him the substantial added expense of taking this appeal, with the resultant delay.
The action is remanded for the purpose of taking defendant's testimony on the several applications set out in his notice of motion filed with the court in October 1953. The testimony should be taken and completed within 30 days after the filing of the remand order.