53 N.J. Super. 282 (1958)
147 A.2d 263
JOHN CONGLETON, PETITIONER-APPELLANT,
v.
PURA-TEX STONE CORPORATION, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1958.
Decided December 23, 1958.
*284 Before Judges SCHETTINO, HALL and GAULKIN.
Mr. Isidor Kalisch argued the cause for appellant (Mr. Robert Scherling, attorney).
Mr. Francis H. Pykon argued the cause for respondent (Mr. Henry M. Grosman, attorney).
The opinion of the court was delivered by GAULKIN, J.A.D.
Petitioner was denied compensation in the Division of Workmen's Compensation. The denial was affirmed by the County Court, and he appeals.
(Whenever emphasis appears in this opinion, it is ours.)
Respondent was in the "general home improvement" business. Its president, John Cocoziello, testified "we applied siding; we applied roofing; we did carpentry; we did mason work; built dormers, garages, recreation rooms; even built a house once in a while."
In the spring of 1955 petitioner and one Schaffer entered into an oral arrangement with respondent to apply siding upon buildings being "improved" by respondent, for $8 per "square"  a "square" being 100 square feet. Petitioner and Schaffer did this steadily for about a year and a half until, in January 1956, petitioner fell from a scaffold while at work on such a building. It is for the injuries sustained in that fall that he seeks compensation.
In its answer to petitioner's claim petition, respondent denied petitioner was its employee, alleging that petitioner "was an independent contractor together with Durwood Schaffer and took this job with Schaffer as his partner." At the hearing the deputy suggested, and counsel agreed, that this issue of employment be tried first. That was done.
The taking of the testimony was completed in November 1956. Briefs were thereafter filed and, on April 22, 1957, the deputy delivered an oral opinion in which he found "that the relationship of master and servant did not exist." Pursuant thereto, on May 14, 1957, he entered an order dismissing the petition for the "reasons * * * more *285 fully expressed in my opinion rendered at the conclusion of this case which opinion is heretofore [sic] incorporated in this order * * *."
The opinion and the order are not adequate to discharge the deputy's "responsibility to make proper findings upon the essential matters to be determined under the claim petition." Folsom v. Magna Manufacturing Co., 14 N.J. Super. 363, 369 (App. Div. 1951); Gagliano v. Botany Worsted Mills, 13 N.J. Super. 1 (App. Div. 1951); Patton v. American Oil Co., 13 N.J. Misc. 825 (Sup. Ct. 1935) affirmed 116 N.J.L. 382 (E. & A. 1936). Cf., Testut v. Testut, 32 N.J. Super. 95 (App. Div. 1954).
We quote the oral opinion of the deputy in full:
"In this case, hearings were held on the question of whether or not the relationship of master and servant existed between the petitioner and the respondent in the instant case, and if it was so found to be, that medical testimony was to be offered.
On the issue of master and servant relationship, it was stipulated that the respondent received notice of an alleged accident which occurred on January 5, 1956. The respondent did pay temporary of 10 weeks at $30 a week, alleging that it was paid under a misapprehension of its liability.
At the outset it might be observed that the truth is hardly recognizable from either the petitioner's or the respondent's case, so that the matter resolves itself into the observations that have been made by me as the witnesses testified and evaluating their testimony for whatever weight it might have.
Briefs were submitted by each side, and these were duly considered as well as all of the exhibits and testimony in this case.
From a consideration of all the testimony, exhibits and stipulations, I am satisfied and find that the relationship of master and servant did not exist. It is my opinion and I find that this was a joint venture between Schaefer [sic] and the petitioner. This conclusion is supported in part by the payment to Schaefer and Congleton of a check which was divided among all of the parties concerned, after Schaefer deducted for his gas, and also the testimony of Congleton as to his truck, and his renting of premises.
While the petitioner relies on the case of Amend, because of the payment of temporary or acknowledgement of the carrier in a letter, nevertheless this case, cited in [Amend v. Amend, 12 N.J. Super. 425], 79 A.2d 742 held that the filing of the Forms One, Two and Three constitute prima facie case for claimant in compensation proceedings, and is not definitive or the finality of things as far as liability is concerned.
The petitioner [sic] is therefore dismissed."
*286 (Parenthetically, we do not understand what relevancy "the testimony of Congleton as to his truck, and his renting of premises" has to this case. The testimony was that between four and seven years before the hearing Congleton owned a truck, and rented a storeroom in which he lived while he was separated from his wife.)
As we have said, the deputy's written judgment added nothing. After reciting the appearances it said:
"* * * the petitioner having alleged that he was an employee of the respondent, and was injured in the course of and arising out of his employment, and the respondent having denied that the petitioner was in the employ of the respondent, and after hearing the testimony of the petitioner and his witnesses and from the stipulations of the parties, the exhibits entered into evidence, after a careful observation of the testimony of all of the parties and witnesses, I conclude to find judgment as follows; The relationship of master and servant did not exist between the respondent and petitioner, and it is my opinion and I find that this was a joint venture between Schaefer and the petitioner, and my reasons are more fully expressed in my opinion rendered at the conclusion of this case which opinion is heretofore [sic] incorporated in this order, and
It is, therefore, on this 14th day of May, 1957 ordered that the petition filed in this matter be and is hereby dismissed and let judgment be entered accordingly."
In the opinion and the judgment of the deputy there are, plainly, no findings of fact to which we can give any "consideration," as directed by Russo v. United States Trucking Corp., 26 N.J. 430 (1958). Nor is it possible for us to give any weight to his opportunity to judge of the credibility of the witnesses. He does not point out which testimony he accepts and which he rejects. He gives no grounds for his injudicious statement that "the truth is hardly recognizable from either the petitioner's or the respondent's case." Such a broadside adds nothing to an opinion, and takes away much from the dignity of the court that delivers it.
Our examination of the record reveals to us no justification to condemn every witness and all of the testimony. As we have seen, the deputy himself, after making that statement, went on "the matter resolves itself into the observations that have been made by me as the witnesses *287 testified and evaluating their testimony for whatever weight it might have." A trier of fact may reject testimony because it is inherently incredible, or because it is inconsistent with other testimony or with common experience, or because it is overborne by other testimony. Cf., Ferdinand v. Agricultural Ins. Co. of Watertown, N.Y., 22 N.J. 482 (1956). When the trier of fact reports what testimony he has rejected, and why, it is helpful to a reviewing court. His views, being thus based on reason, will then have great weight. A disbelief of a particular witness which is engendered by mere observation is, of course, much more difficult to communicate to the reviewing court. However, if the deputy does report that he disbelieved a particular witness because of what he observed about him (and especially when the deputy reports what it is that he observed), his disbelief will have weight with the reviewing court; but a blanket indictment of an entire case, without particulars, has no persuasive force.
Upon petitioner's appeal to the County Court, that court remanded the case to the deputy to take further testimony. Upon the coming in of that testimony the County Court affirmed, with a written opinion. Unfortunately that opinion, although much fuller than the deputy's, also does not contain sufficiently explicit findings upon the essential fact questions involved in the issues on appeal. Folsom v. Magna Manufacturing Co., supra; R.R. 5:2-5. Cf., Testut v. Testut, supra. On the crucial question of "control," the findings of the County Court are inadequate. All that the County Court says on this point is, "The work was supervised by regular employees of respondent." What the County Court means by "supervised" it does not say. The only example of supervision it gives is, "If wrong shingles were applied, appellant and his co-workers were told to tear them down and replace shingles." The County Court does not say whether the "team" was told how to do, or only what to do. Since the County Court did affirm the denial of compensation one might infer that it concluded that there was no "control." So fundamental a question should not *288 be left to inference. But beyond that, the opinion of the County Court indicates that it reached that conclusion because it accepted and relied upon the deputy's blanket denunciation of petitioner's case.
The Russo case has not minimized the importance of sufficient findings of fact by the deputy and the County Court. Although the Russo case requires "the reviewing court to weigh the evidence," it directs the reviewing court to give "full and respectful consideration of the views expressed, on both fact and law, by the Division and intervening appellate courts" and "due regard to the opportunity of the hearer of the evidence to judge of the credibility of the witnesses." Russo, supra, 26 N.J. at page 435.
It is obvious that if the record does not contain adequate findings of fact, there have been no "views expressed, on * * * fact" to which the reviewing court can give "consideration." Nor can it determine the validity of the inferences drawn or the conclusions reached by the tribunals below if the underlying facts upon which the inferences and conclusions were based are not found. Consequently the conclusions of law of the court below may then be, to the reviewing court, "of no value because of absence of pertinent findings * * *," Ricciardi v. Marcalus Mfg. Co., 47 N.J. Super. 90, 101 (App. Div. 1957), reversed on other grounds 26 N.J. 445 (1958). What was said in the divorce case of Testut v. Testut, supra, 32 N.J. Super. 95, at page 100 is equally valid and important here:
"The requirement that the trial judge file findings of fact and conclusions of law is not merely for the convenience of the upper court on appeal. While it does serve that end, it has the far more important purpose of evoking care on his part in ascertaining the facts and the applicable law. United States v. Forness, supra, 2 Cir., 125 F.2d 928, at page 942, where Judge Frank said:
`For, as every judge knows, to set down in precise words the facts as he finds them is the best way to avoid carelessness in the discharge of that duty: Often a strong impression that, on the basis of the evidence, the facts are thus-and-so gives way when it comes to expressing that impression on paper. The trial court is the most important agency of the judicial branch of the government precisely because on it rests the responsibility of ascertaining the facts.'"
*289 We have the power to remand this case with instructions to make the necessary findings of fact, but it is almost three years since the injury, over two years since the trial before the deputy, and the case has already been remanded once. Therefore, to avoid further delay, we have weighed the evidence. The clear weight of the evidence leads us to make the following "findings of fact," pursuant to R.R. 1:5-4(b).
Respondent, through its salesmen, solicited home modernizing contracts, of which new siding constituted a large part. To put on this siding, respondent hired "teams" such as Schaffer and petitioner. Although it is possible for one man to put on siding by himself, it is not practical "because one man can't handle the ladder and handle the scaffold."
Schaffer and petitioner had worked for various employers as such a "team" for many years. In the spring of 1955 they applied to respondent for work for the first time, and were directed to begin immediately.
Respondent and its agents not only told Schaffer and the petitioner where and when to work, and what to do, but how to do it. For example, Schaffer testified that respondent's president Cocoziello "would walk all around the house and he would tell me this had to be done and that had to be done and this had to be changed, and `Don't do this' and `Don't do that.' I mean, he supervised me in all the work that was to be done on the house." There was similar testimony from petitioner and other witnesses. Cocoziello denied this, but he admitted he criticized the work "on occasion."
Furthermore, the modernization frequently involved other carpenter work, cleaning up, and other incidentals, for which the "team" was paid extra. Cocoziello told the "team" what extra work to do and how to do it.
Respondent moved the "team" from one job to another even while the job from which the "team" was moved was unfinished. Respondent insisted on the "team" being at work at 8 A.M.; and when they were late, it "raised sand." *290 Schaffer testified that once, when the "team" failed to report for work because of illness in Schaffer's family, "* * * my phone rang about a hundred times. `Where were you? What was you doing? People are calling here all day long complaining to me. Why aren't you on the job?' I mean, one word led to another and, he says, `Well, if you want to work here you got to be on the ball,' something like that."
Respondent often pushed the "team" to hurry. For example, Schaffer testified: "* * * He says to me a lot of times, he says  well, he says, `Hurry up and get this job done. I have got another one for you to go on. I want to get it done because this man is going away on a vacation' or `This fellow is going to be off next week and he wants to be home while the work is being done.'" Consequently, whenever a job was too large to be finished expeditiously by Schaffer and petitioner alone, Schaffer and petitioner added men to the "team."
Schaffer used his own truck to go to each job, and transported petitioner (and other members of the "team" when there were any) with him. Material was delivered to the job site by respondent, but occasionally Schaffer picked up some at respondent's yard, in his truck. However, respondent placed its signs with its name on the sides of Schaffer's truck, concealing Schaffer's name and address, and insisted on the replacement of the signs whenever they became damaged. The signs, in part, said "Job Done By Pura-Tex Stone." Respondent introduced Schaffer to the owners of the homes upon which work was being done as its "foreman." All dealings with the owner were by respondent, and respondent gave strict orders that all complaints, requests for changes and so forth, were to be made to it.
The "team" usually used their own tools, ladders, scaffolding and other equipment, but from time to time respondent's were used. For "cleaning up," respondent's truck was used.
Respondent paid what it owed the "team" in a lump sum, in cash or by check payable to one or more members of the "team." It made no deductions from the sums paid the *291 "team" for income tax, or for social security or similar taxes. On the other hand, the "team" did not have to wait for its money until all the "team's" work on a particular house was finished. If the job ran beyond Friday, respondent paid for the work done to Friday. Whatever monies were received by the "team" from respondent were split share and share alike by the members of the "team," after deducting a sum for Schaffer for the use of his truck.
Petitioner and Schaffer worked for no one but respondent during the year and a half from their hiring to the date of the accident. During that period they worked quite steadily. In the few brief intervals during which there was no work, they sought no other work but held themselves in readiness for respondent.
The work done by petitioner and Schaffer "was recurring employment, that is, a hiring to perform work at some future time without further engagement, as the necessity therefor arose, as distinguished from hiring to do a single piece of work." Fitzpatrick v. Haberman, 16 N.J. Super. 490, 494 (App. Div. 1951); and respondent had the right to "fire" the "team" at any time.
We find that respondent retained and exercised the right to direct the manner in which the work was to be done, as well as the result to be accomplished.
We therefore conclude that the weight of the evidence demonstrates beyond question that petitioner was respondent's employee, within the meaning of the Workmen's Compensation Act. Hannigan v. Goldfarb, 53 N.J. Super. 190 (App. Div. Dec. 15, 1958); Shaffer v. Brown, 32 N.J. Super. 413 (App. Div. 1954) in which employment was found upon facts quite similar to those at bar. It is interesting to note that in respondent's brief no attempt is made to distinguish Shaffer v. Brown, supra. Indeed respondent does not even mention the case, even though petitioner's brief relies upon it heavily. See also Fitzpatrick v. Haberman, supra; Piantanida v. Bennett, 17 N.J. 291 (1955); Wadge v. Crestwood Acres, Inc., 128 N.J.L. 551 (Sup. Ct. 1942), affirmed 129 N.J.L. 400 (E. & A. 1943); *292 Weeks v. McConnell, 196 Tenn. 110, 264 S.W.2d 573 (Sup. Ct. 1954); Graf v. Montgomery Ward & Co., 234 Minn. 485, 49 N.W.2d 797 (Sup. Ct. 1951); Hume v. Industrial Commission, 248 Wis. 5, 20 N.W.2d 573 (Sup. Ct. 1945); State ex rel. Herbert v. Sword, 62 N.E.2d 506 (Ohio Ct. App. 1945) (not officially reported); Saile v. Joseph Cashier Co., Inc., 253 App. Div. 848, 1 N.Y.S.2d 351 (App. Div. 1938); People v. Manzo, 26 N.Y.S.2d 566 (Cty. Ct. 1941); Larson, Workmen's Compensation, § 45.22, p. 622. Contra, Nollett v. Holland Lumber Co., 141 Neb. 538, 4 N.W.2d 554 (Sup. Ct. 1942).
Respondent cites Hart v. Kimball, 122 N.J.L. 217 (Sup. Ct. 1939). However, in that case it was (122 N.J.L. at page 221) "* * * the undenied fact that defendant's business was selling materials and not applying them, whereas prosecutor in conjunction with his brother was engaged in the contracting business doing this very sort of work * * *." In that case Kimball sold roofing material to be applied on a house by an independent contractor. The court says:
"The contractor who was to apply the materials * * * became involved in a controversy with the owner and abandoned the work. Kimball was interested in seeing to it that the project was completed in order that he might be paid for the material he had delivered. He, therefore, undertook to get someone to finish it. The prosecutor, Donald Hart, and his brother were engaged in this type of work, operating as the Hart Remodeling Co. Kimball had previously sold them materials. He had never previously employed them either as contractors or as employes."
The case is obviously not in point. We have examined the other cases cited by respondent, but find they also do not apply to the facts here.
The judgment of the County Court is therefore reversed and the case is remanded to the Division for further proceedings not inconsistent with this opinion. It is, therefore, not necessary to pass on the appellant's other grounds of appeal.