# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3031-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

O.A.C.,

     Defendant-Appellant.

_____

Submitted October 13, 2021 – Decided September 28, 2022

Before Judges DeAlmeida and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 19-07-0767.

Scott D. Finckenauer, attorney for appellant.

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Noah Kim, Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Defendant O.A.C.[1] appeals from a judgment of conviction entered after a jury convicted him of ten counts arising from his sexual assaults of his two step-granddaughters, Ka.F. and Ki.F., when they were minors. We affirm.

I.

Defendant began sexually assaulting Ka.F. when she was six. While he was babysitting the child at her grandparents' house, defendant touched her inner thigh, breasts, buttocks, and vagina over and under her clothes. These assaults took place while Ka.F. was sitting on defendant's lap. Defendant's assaultive conduct escalated to him placing Ka.F. on a bed, removing her underwear, kissing her thighs, and performing cunnilingus on her, penetrating her with his tongue. He rubbed his penis on the child's vagina, penetrating the lips of her vagina. When Ka.F. resisted, defendant forcefully grabbed her arms and legs to bring her closer to him and threatened to harm her parents. Ka.F. was terrified during the assaults.

Ka.F. could not identify the precise number of times the sexual assaults occurred because they were so common. Defendant assaulted her almost every time she visited her grandparents' house. He showed Ka.F. pornography and

---

[1] We refer to defendant and others by their initials to protect from public disclosure the identity of child victims of sexual assault. R. 1:38-3(c)(9).

A-3031-19

bought her things she wanted, like a bicycle, with the expectation of the sexual abuse afterwards.

Defendant's sexual abuse of Ka.F. took place between March 2004 and March 2010.  He stopped assaulting Ka.F. when she was ten or eleven years old and told him she was having her period.  Ka.F. did not report the sexual abuse at the time it was happening because she feared it would ruin her family.  However, when Ka.F. was in the sixth grade she told her best friend, J.U., about the assaults.  When she was fifteen, Ka.F. attempted to tell her mother about the assaults, but was brushed off by her.

At trial, J.U. testified that when she and Ka.F. were in the sixth grade Ka.F. told her that her grandfather touches her breasts and genitals.  She noticed Ka.F. was about to cry as she described the sexual abuse.  J.U. never told anyone what Ka.F. had confided in her.

Defendant began sexually abusing Ki.F., Ka.F.'s sister, in 2013, when she was six years old.  When Ki.F. was alone with defendant at her grandparents' house, he would grab her and touch her breasts and vagina, putting his fingers in between the lips of her vagina.  He put his mouth on her breasts and performed cunnilingus on her.  Defendant rubbed his penis on Ki.F.'s vagina.  He forced her to perform fellatio and to touch his penis as he masturbated.  Defendant made

Ki.F. watch pornography while touching her breasts and vagina. Ki.F., who was eleven when she testified, described a slimy, white substance coming out of defendant's penis during the assaults.

Defendant sexually abused Ki.F. every time she went to her grandparents' house. He bought Ki.F. a bicycle, ice cream, and school supplies, and would take her to the park, all with the expectation of sexual abuse afterward. When Ki.F. refused his demands, defendant would hit her with a sandal and threaten to harm her mother and grandmother. Ki.F. attempted to tell her grandmother about the sexual abuse, but her grandmother did not believe her. Defendant sexually abused Ki.F. from November 2013 to April 2018.

In April or May of 2018, Ka.F. began suspecting defendant was abusing Ki.F. when she noticed that he was buying her things and taking her to the park. Defendant's conduct reminded Ka.F. of his behavior when he was sexually abusing her. She approached Ki.F. and told her to "be careful" when she was left alone with defendant. Ki.F. spontaneously exclaimed, "I know." Ka.F. then asked Ki.F. to blink twice if defendant was sexually abusing her because she thought Ki.F. might not want to answer verbally. Ka.F. also hit the record button on her cellphone. Ki.F. blinked twice. In the recorded conversation that followed, Ki.F. said defendant would touch her sexually, and when she tried to

4

back away, he would get angry. Ki.F. also said defendant would take off both his and her clothes, and when she resisted, he would threaten to leave their grandmother and harm her family members. Ka.F. played the recording for L.F., the victims' father, an hour or two later.

L.F. testified that in April or May of 2018, Ka.F. approached him and played the recording of her conversation with Ki.F. The following day, he called the children's grandmother to ask what she wanted him to do with defendant. He waited three months to report the sexual abuse to police because he was awaiting a response from the grandmother, who was ill, and defendant.

In August 2018, after the Hudson County Prosecutor's Office received a referral from local police, a detective recorded an interview with Ki.F. During the interview, Ki.F. described defendant's sexual abuse in detail. She also said that when she resisted, defendant would become violent and aggressive and "grab her face into the wall." Ki.F. told the detective that defendant kept pornographic videos he forced her to watch in a box behind curtains in her grandparents' home. The detective testified that during a search of the home, pornographic videos were recovered from the area described by Ki.F.

A grand jury indicted defendant, charging him with first-degree aggravated sexual assault (Ka.F.), N.J.S.A. 2C:14-2(a)(1); second-degree sexual

5

assault (Ka.F.), N.J.S.A. 2C:14-2(b); second-degree endangering the welfare of a child (Ka.F.), N.J.S.A. 2C:24-4(a)(1); first-degree aggravated sexual assault (Ki.F. oral penetration), N.J.S.A. 2C:14-2(a)(1); first-degree aggravated sexual assault (Ki.F. fellatio), N.J.S.A. 2C:14-2(a)(1); first-degree aggravated sexual assault (Ki.F. digital penetration), N.J.S.A. 2C:14-2(a)(1); second-degree sexual assault (Ki.F.), N.J.S.A. 2C:14-2(b); third-degree terroristic threats (Ki.F.), N.J.S.A. 2C:12-3(a); second-degree endangering the welfare of a child (Ki.F.), N.J.S.A. 2C:24-4(a)(1); and second-degree aggravated assault (Ki.F.), N.J.S.A. 2C:12-1(b).

The State moved in limine pursuant to N.J.R.E. 803(c)(27) for an order that Ki.F.'s recorded statements to Ka.F. and the detective were admissible under the tender years exception to the hearsay rule.[2] After a hearing pursuant to N.J.R.E. 104, at which Ka.F. and the detective testified, the trial court granted the State's motion.

In a written opinion, the court found that under the totality of the circumstances, the recorded statement Ki.F. made to Ka.F. was trustworthy. The

---

[2] The parties agreed Ka.F.'s out-of-court statement to J.U. was admissible under the fresh-complaint doctrine. "That doctrine allows the admission of evidence of a victim's complaint of sexual abuse, otherwise inadmissible as hearsay, to negate the inference that the victim's initial silence or delay indicates that the charge is fabricated." State v. R.K., 220 N.J. 444, 455 (2015).

court found that Ki.F.'s exclamation, "I know" was spontaneous and the questioning by Ka.F. that followed was mostly open-ended. In addition, the court found Ki.F.'s account of the abuse was consistently repeated without deviation. The court also found Ki.F.'s state of mind at the time she made the statement points to reliability, as she believed she was in a safe environment with her sister, whom she trusted. The court also found the terminology Ki.F. used evidenced an absence of coaching, because she did not use medically correct terminology. Finally, the court found an absence of evidence of motivation to fabricate allegations against defendant or partisanship on the part of Ka.F., who the court found was motivated by a desire to protect her sister.

The court also found the recorded statement of Ki.F. to the detective was admissible. The court found that the detective asked non-leading and non-suggestive questions in accordance with her specialized training. In addition, the court found that Ki.F.'s account of the sexual abuse was consistent with the statement she previously made to Ka.F. and the circumstances in which the statement was made supported a finding of reliability.

Defendant subsequently moved to sever trial of the charges relating to Ka.F. from trial of the charges relating to Ki.F. The State opposed the motion. In an oral opinion, the court explained that where evidence established that

7

multiple offenses are linked as part of the same transaction or series of transactions, as is the case here, severance will be granted only when a defendant establishes prejudice will result if the charges are tried together. Prejudicial joinder, the court reasoned, is found when the jury may use evidence of one of the crimes charged to infer criminal disposition on defendant's part to commit the other crimes charged. The court noted that the test for determining prejudice in these circumstances is whether, assuming the charged crimes were tried separately, evidence of one set of charged crimes would be admissible in the trial of the other set of charged crimes.

The court concluded that under N.J.R.E. 404(b) and the holding in State v. Cofield, 127 N.J. 328, 338 (1992), if the counts were severed for trial, evidence of defendant's sexual abuse of Ka.F. would be admissible in the trial of the counts concerning Ki.F. and evidence of defendant's sexual abuse of Ki.F. would be admissible in the trial of the counts concerning Ka.F. The court reasoned that the evidence of defendant's abuse of each victim is clear and convincing. In addition, the court found the details of defendant's sexual assaults against the two victims are similar, as were the circumstances of the assaults – defendant's access to the victims as a babysitter and his familial

relationship to both victims. This evidence, the court found, is relevant to defendant's motive, opportunity and intent.

The court also reasoned that defendant's history of sexual abuse of Ka.F. would be admissible in the trial of charges relating to Ki.F. because of the circumstances of Ki.F.'s disclosure of the abuse to her sister. Defendant's sexual abuse of Ka.F., and the manner in which he carried out the abuse, were the reasons she suspected defendant was sexually abusing Ki.F. Without that evidence, the jury would not have a full understanding of the circumstances in which Ki.F. revealed defendant's abuse to Ka.F. In addition, the court found the probative value of the evidence outweighed any prejudice to defendant.

After the State rested, defendant moved for a judgment of acquittal. In an oral opinion, the court denied the motion, finding the State had offered sufficient evidence for the jury to find each element of the crimes charged had been proven beyond a reasonable doubt. The court rejected defendant's argument that inconsistencies in the victims' testimony and their father's history of hostility toward defendant created reasonable doubt as a matter of law as to all charges.

The jury convicted defendant of all counts of the indictment, except second-degree aggravated assault. On that count, the jury convicted defendant of the lesser included offense of simple assault, N.J.S.A. 2C:12-(1)(a)(1).

9

After finding two aggravating factors and no mitigating factors, the court sentenced defendant to an aggregative sixty-year term of imprisonment, with an eighty-five-percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

This appeal followed. Defendant makes the following arguments.

> POINT I
>
> THE STATE FAILED AT TRIAL TO PROVE THE CHARGES AGAINST DEFENDANT-APPELLANT BEYOND A REASONABLE DOUBT.
>
> POINT II
>
> THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT[']S MOTION TO SEVER DUE TO PREJUDICIAL JOINDER.
>
> POINT III
>
> THE TRIAL COURT ERRED IN ADMITTING THE VICTIM[']S STATEMENT[S] PURSUANT TO N.J.R.E. 803(C)(27) – THE TENDER YEARS EXCEPTION.

II.

A.

We review a denial of a motion for a judgment of acquittal de novo. State v. Williams, 218 N.J. 576, 593-94 (2014); State v. Brown, 463 N.J. Super. 33, 47-48 (App. Div. 2020). The motion pursuant to R. 3:18-1 will be denied "if

'viewing [only] the State's evidence in its entirety, be that evidence direct or circumstantial,' and giving the State the benefit of all reasonable inferences, 'a reasonable jury could find guilt . . . beyond a reasonable doubt.'" State v. Sugar, 240 N.J. Super. 148, 152 (App. Div. 1990) (alteration in original) (quoting State v. Reyes, 50 N.J. 454, 458-59 (1967)).  The beyond a reasonable doubt standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).

"In the absence of independent witnesses, the case often turns on an assessment of the credibility of the participants, an assessment better left to the trier of fact."  State v. Budis, 125 N.J. 519, 528 (1991).  "A trier of fact may reject testimony because it is inherently incredible, or because it is inconsistent with other testimony or with common experience, or because it is overborne by other testimony."  Congleton v. Pura-Tex Stone Corp., 53 N.J. Super. 282, 287 (App. Div. 1958); see also E&H Steel Corp. v. PSEG Fossil, LLC, 455 N.J. Super. 12, 29 (App. Div. 2018) (holding that a factfinder may accept some parts of a witness's testimony and reject other parts).

We have carefully reviewed the record and find no basis on which to reverse the trial court's denial of defendant's motion for a judgment of acquittal.

11

Defendant's arguments are primarily based on what he describes as inconsistencies in the victims' recorded statements and testimony. For example, defendant points out that Ki.F. testified that defendant rubbed his penis against her vagina, but during her interview with the detective did not report that contact, stating only that defendant put his hands and face on her vagina. In addition, Ki.F. told Ka.F. during their recorded conversation that defendant showed her what she thought was an exercise video. However, Ki.F. told the detective that defendant showed her several pornographic videos. Ki.F. also told the detective that Ka.F. was the first person she told about the sexual abuse, although she had earlier told Ka.F. that she told her grandmother about the abuse but was not believed. Defendant also argued Ka.F. prompted Ki.F. to accuse defendant of sexually abusing her by revealing to Ki.F. details of Ka.F.'s alleged sexual abuse.

Finally, defendant argues trial testimony revealed a history of animosity between defendant and the victims' family, including their father. The victim's father testified that he left the children in defendant's care because of defendant's manipulation and that the victims knew their father thought defendant was ignorant and a manipulator.

12

Each of these points could have been or was raised by defendant's counsel before the jury. As the finders of fact, the jury was authorized to weigh the testimony, decide whether the alleged inconsistencies were actually direct contradictions, and, if so, to decide what facts had been established beyond a reasonable doubt. There was more than sufficient evidence on which the jury could rely to decide beyond a reasonable doubt that defendant engaged in long-term sexual abuse of his step-granddaughters while responsible for their care, threatened them if they revealed his sexual abuse, and engaged in the other crimes alleged against him.

B.

We are not persuaded by defendant's argument regarding the trial court's denial of his motion to sever the trial of the charges. R. 3:7-6 provides that

> [t]wo or more offenses may be charged in the same indictment or accusation . . . if the offenses charged are of the same or similar character or are based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan. Relief from prejudicial joinder shall be afforded as provided by R. 3:15-2.

Where "it appears that a defendant . . . is prejudiced by a . . . joinder of offenses . . . the court may order . . . separate trials of counts . . . or direct other appropriate relief." R. 3:15-2(b). The rule addresses the inherent

13

danger when several crimes are tried together, that the jury may use the evidence cumulatively; that is, that, although so much as would be admissible upon any one of the charges might not have persuaded them of the accused's guilt, the sum of it will convince them as to all.

[State v. Pitts, 116 N.J. 580, 601 (1989) (quoting United States v. Lotsch, 102 F.2d 35, 36 (2d Cir. 1939)).]

In addition, a jury may use the evidence of another crime to conclude defendant has a criminal propensity. State v. Reldan, 185 N.J. Super. 494, 502 (App. Div. 1982). Such an inference could lead the jury to "employ an entirely different . . . calculus of probabilities to determine the defendant's guilt or innocence." State v. Stevens, 115 N.J. 289, 303 (1989) (quotations omitted).

"The test for assessing prejudice is whether, assuming the charges were tried separately, evidence of the offenses sought to be severed would be admissible under [N.J.R.E. 404(b)] in the trial of the remaining charges." State v. Sterling, 215 N.J. 65, 73 (2013) (alteration in original) (quoting State v. Chenique-Puey, 145 N.J. 334, 341 (1996) (internal quotations omitted)).

N.J.R.E. 404(b) provides, in relevant part, as follows:

(b)     Other Crimes, Wrongs, or Acts.

(1)     Prohibited Uses.  Except as otherwise provided by Rule 608(b),[3] evidence of other crimes, wrongs, or

---

[3] Rule 608(b) is not applicable here.

acts is not admissible to prove a person's disposition in order to show that on a particular occasion the person acted in conformity with such disposition.

(2)    Permitted Uses.  This evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

"The Rule's list of issues for which other-crime evidence may be admissible is not intended to be exclusive."  State v. Oliver, 133 N.J. 141, 151 (1993). "Subject to the 'probativeness/prejudice' balancing test of [N.J.R.E. 403], other-crimes evidence may be admitted under [N.J.R.E. 404(b)] when that evidence bears on any fact genuinely in issue."  Ibid.

The Supreme Court established four factors to be weighed when deciding if other crimes evidence is admissible under N.J.R.E. 404(b):

1.    The evidence of the other crime must be admissible as relevant to a material issue;

2.    It must be similar in kind and reasonably close in time to the offense charged;

3.    The evidence of the other crime must be clear and convincing; and

4.    The probative value of the evidence must not be outweighed by its apparent prejudice.

[Cofield, 127 N.J. at 338.]

15

"Because evidence of a defendant's previous misconduct 'has a unique tendency' to prejudice a jury, it must be admitted with caution." State v. Willis, 225 N.J. 85, 97 (2016) (quoting State v. Reddish, 181 N.J. 553, 608 (2004)). "Prior-conduct evidence has the effect of suggesting to a jury that a defendant has a propensity to commit crimes, and, therefore, that it is 'more probable that he committed the crime for which he is on trial.'" Ibid. (quoting State v. Weeks, 107 N.J. 396, 406 (1987)).

The Supreme Court has upheld the use of joinder to try a defendant in a single trial for sexual crimes committed against multiple victims on diverse dates. See e.g., Oliver, 133 N.J. at 150-56 (other-crimes evidence admissible to show the feasibility of defendant sexually assaulting women in his bedroom while other family members were present in the house and to show defendant lured women to his home on a pretext); Stevens, 115 N.J. 289 at 294-95, 306-07 (other-crimes evidence admissible to show intent of police officer charged with subjecting female arrestees to inappropriate strip searches on various occasions for his sexual gratification).

A more recent decision, State v. J.M., Jr., 225 N.J. 146 (2016), however, explains the limits of those precedents. In J.M., Jr., the defendant was a massage

16

therapist charged with sexually assaulting a client while giving her a massage. Id. at 150.  The defendant denied any sexual contact with the victim.  Id. at 153.

Prior to trial, the State moved to admit evidence that the defendant had committed a similar sexual assault against a female client years earlier while working as a massage therapist in Florida.  Ibid.  The Florida incident resulted in criminal charges of which the defendant was acquitted by a jury.  Ibid.  After conducting a hearing at which the Florida client testified, the trial court admitted the evidence of the Florida sexual assault under Rule 404(b), as relevant to motive, intent, plan, and/or absence of mistake.  Id. at 154.

On leave to appeal, the Supreme Court reversed.  The Court held that "[i]n a case in which a defendant contends the alleged assault did not occur, intent and absence of mistake are not at issue.  In the absence of a genuinely contested fact, other-crime evidence is irrelevant and the first Cofield prong cannot be satisfied."  Id. at 159.  The Court explained that when a "[d]efendant does not argue that the alleged sexual assault . . . was consensual or accidental[,]" evidence of a prior alleged sexual assault "is inadmissible to establish motive, intent, or absence of mistake because defendant's state of mind is not a 'genuinely contested' issue in the case."  Id. at 160 (quoting Willis, 225 N.J. at 98).

A-3031-19

Nor, the Court explained, was the prior-conduct evidence admissible "for proof of plan, because it is insufficient to 'establish the existence of a larger continuing plan of which the crime on trial is a part[.]'" Id. at 160 (quoting Stevens, 115 N.J. at 306 (alterations in original)). "A 'strong factual similarity' between the two sexual assaults is not enough to reveal a plan." Ibid. (quoting Stevens, 115 N.J. at 305). Finally, the Court found that the probative value of the evidence of the Florida sexual assault was outweighed by its potential for undue prejudice – "namely, the jury's inevitable assumption that defendant has a propensity to engage in such conduct . . . ." Id. at 161.

Given that defendant denied any sexual contact with Ka.F. and Ki.F., it was error for the trial court to conclude that evidence of the sexual assault of each victim was relevant to defendant's motive, intent, or opportunity with respect to his sexual assault of the other victim.

However, the trial court correctly concluded that this evidence was admissible because of its relevance to other genuinely contested facts: the circumstances surrounding the motivation triggering Ka.F.'s delayed reporting of defendant's abuse and Ki.F.'s disclosure of defendant's abuse to her sister and police. It was Ka.F.'s history of being abused by defendant that caused her to be suspicious that defendant was abusing Ki.F. and to ask her sister if defendant

18

was sexually abusing her. In order to explain the basis for Ka.F.'s suspicion it was necessary for the State to inform the jury of the details of defendant's sexual abuse of Ka.F. Ka.F.'s suspicion regarding defendant's abuse of Ki.F., and Ki.F.'s disclosure of defendant's abuse of her, resulted in Ka.F.'s delayed disclosure that she too had been sexually abused by defendant years after the abuse ended. Thus, if the charges against Ka.F. had been tried separately, evidence of defendant's sexual abuse of Ki.F. would have been admissible at that trial.

In addition, in order to establish what triggered Ki.F.'s disclosure of defendant's sexual abuse, it was necessary for the State to introduce evidence that Ka.F. approached Ki.F. because defendant was behaving toward Ki.F. in a way that was similar to how he was acting toward Ka.F. when he was sexually abusing her. The circumstances leading to Ki.F.'s disclosure are relevant to the credibility of her accusations against defendant. Thus, if the charges against Ki.F. had been tried separately, evidence of defendant's sexual abuse of Ka.F. would have been admissible at that trial.

These circumstances differ considerably from those before the Court in J.M., Jr. There, the other bad acts evidence concerned a sexual assault against a victim that bore no relationship, other than their factual similarities, to the

sexual assault for which the defendant was standing trial. The motivation and timing of the two victims' reporting of that defendant's sexual abuse bore no relationship to one another and were not genuinely contested in J.M., Jr. Consequently, we do not view the holding in J.M., Jr. to be controlling here.

C.

Finally, we find no error in the trial court's decision to admit Ki.F.'s out-of-court statements to Ka.F. and the detective. We review a trial court's evidentiary rulings with deference. State v. Hyman, 451 N.J. Super. 429, 441 (App. Div. 2017). "[T]he decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010). An abuse of discretion is found only when the court has made a "clear error of judgment." State v. Koedatich, 112 N.J. 225, 313 (1988). The court's evidentiary decision should be sustained unless it resulted in a "manifest denial of justice." State v. Perry, 225 N.J. 222, 233 (2016) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)).

"'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." N.J.R.E. 801(c). Hearsay is not admissible unless subject to a specific exception. N.J.R.E. 802.

20

N.J.R.E. 803(c)(27) provides an exception to the exclusion of hearsay statements by a child relating to a sexual offense.  The rule provides that

> [a] statement made by a child under the age of 12 relating to sexual misconduct committed with or against that child is admissible in a criminal . . . case if (a) the proponent of the statement makes known to the adverse party an intention to offer the statement and the particulars of the statement at such time as to provide the adverse party with a fair opportunity to prepare to meet it; (b) the court finds, in a hearing conducted pursuant to Rule 104(a), that on the basis of the time, content and circumstances of the statement there is a probability that the statement is trustworthy; and (c) either (i) the child testifies at the proceeding, or (ii) the child is unavailable as a witness and there is offered admissible evidence corroborating the act of sexual abuse; provided that no child whose statement is to be offered in evidence pursuant to this rule shall be disqualified to be a witness in such proceeding by virtue of the requirements of Rule 601.
>
> [N.J.R.E. 803(c)(27).]

The trial court, after a hearing, made credibility determinations and findings of fact with respect to the admissibility of Ki.F.'s out-of-court statements that are amply supported by the record.  We find no basis on which to conclude that the trial court erred when it found the circumstances of Ki.F.'s disclosure to Ka.F. and her recorded interview by the detective were indicative of trustworthiness.  Defendant's arguments to the contrary are unpersuasive.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21

A-3031-19